# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-99-00704-CR
===============

**Charles Scott Harnett, Appellant**

**v.**

**The State of Texas, Appellee**

=============================================================================
### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR98-339, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING
=============================================================================


This appeal is taken from a conviction for sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(1)(A) (West Supp. 2000). After finding appellant Charles Scott Harnett guilty, the jury assessed his punishment at seven years' imprisonment.


**Points of Error**

Appellant advances four points of error. First, appellant claims that the prosecutor violated the order granting the motion in limine by allowing a witness to refer to an extraneous offense. Second, appellant urges that the trial court erred in allowing a social worker to testify as an expert witness. In his third and fourth points of error, appellant complains that the trial court erred in allowing improper jury argument at both stages of the bifurcated trial. We will affirm.

**Facts**

The sufficiency of the evidence is not challenged. A brief summary of the facts will, however, place the points of error in proper perspective. Appellant and the complainant lived together for approximately thirteen months, except for a two-week separation in March 1998. Their relationship was somewhat turbulent. Appellant's brief states: "[F]ighting was also a part of their relationship." This statement is supported by the record.

The complainant testified that in the early morning hours of Monday, July 20, 1998, she had taken some medication to help her sleep. Appellant began to make sexual advances. She told him that she did not want to have sex and resisted his overtures. They struggled, fought, and then complainant was forced into the bathroom. There, appellant was able to remove her pajamas and have sexual intercourse with her without her consent. Later, on the bed in the bedroom and against her will, appellant sexually assaulted the complainant four times before committing an act of deviate sexual intercourse. The complainant related that she was unable to leave the house until the late afternoon of July 20th when her mother and brother came to get her and took her to a hospital for an examination.

Appellant told the jury a different story. Appellant testified that on Friday, July 17, 1998, he came home without his weekly paycheck because he had been unable to contact his boss. Appellant explained that the complainant was upset because they were unable to go out to eat as they normally did on Friday nights after he had been paid. He obtained the paycheck Saturday morning and that night they had consensual sexual intercourse. Appellant stated there was no "spark." During the late hours of Sunday, July 19th or the early morning hours of July 20th, appellant revealed that he informed the complainant that he was going to

2

terminate their relationship. At this point, according to appellant, the complainant became angry, broke a chair on the kitchen floor, and began to hit him with a piece of the chair. Appellant denied that he sexually assaulted the complainant.

### The Motion in Limine

In the first point of error, appellant contends that the "prosecutor violated the motion in limine by allowing his witness to refer to other crimes, wrongs, or acts of misconduct of the defendant before the jury."

Prior to trial, the parties informed the trial court that they had agreed on appellant's motion in limine and either party would approach the bench before it would attempt to elicit evidence of any extraneous offense or matter. One of the State's witnesses was Terry Partaka, mother of the complainant. Mrs. Partaka testified that she received a telephone call from her daughter about 4:15 p.m. on July 20, 1998. The daughter sounded upset and requested that her mother come and get her immediately. Mrs. Partaka asked to speak with appellant who requested she come to his house and act as a mediator for him and the complainant. The record then reflects:

Q. (by prosecutor): Did you eventually go to her house?

A. Yes. After I talked to her again and asked her a question.

Q. What did you ask her?

A. I asked her if he beat her up again, and I told her to just answer yes or no.

Q. And what did she answer?

A. Nothing.

Mr. Guyer (defense counsel): I have an objection to make. May we approach the bench?

The Court: Yes, sir.

(Discussion out of hearing of the jury)

Mr. Guyer: Violation of the Motion in Limine.

The Court: Clearly.

Mr. Noble (prosecutor): I instructed the witness not to talk about any other incidents.

The Court: I understand. It's a universal problem. All I can do is instruct them to disregard.

Mr. Guyer: We would ask the court to instruct them to disregard.

The Court: All right.

. . .

Mr. Guyer: Move for mistrial (discussion at Judge's bench concluded).

The Court: Noted. Overruled. Ladies and gentlemen, you are instructed to disregard any statements from the witness regarding any physical violence that may or may not have occurred as she has testified to on any other occasion. Thank you.


No formal provision is made for motions in limine in the Texas Code of Criminal Procedure, the Rules, or elsewhere. The lack of an accepted definition renders difficult the determination of the effectiveness of motions in limine in preserving matters for appellate consideration. 43 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure*, § 42.51, at 66 (Texas Practice 1995). A "traditional" motion, as in the instant case, is a motion requesting that the opposing party be directed to approach the trial court before offering certain types of evidence, asking certain questions, or otherwise going into particular areas before the

4

jury. *See Norman v. State,* 523 S.W.2d, 669, 671 (Tex. Crim. App. 1975); *State v. Monroe,* 813 S.W.2d 701, 702 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd).

It is axiomatic that motions in limine do not preserve error. *Webb v. State*, 760 S.W.2d 263, 275 (Tex. Crim. App. 1988); *Maynard v. State,* 685 S.W.2d 60, 64 (Tex. Crim. App. 1985). This is true whether the motion is granted or denied. *Willis v. State*, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989); *Webb,* 760 S.W.2d at 275. A ruling on a motion in limine does not purport to be one on the merits but one regarding the administration of the trial. The remedy for a violation of a ruling on a motion in limine rests with the trial court. *Brazzell v. State,* 481 S.W.2d 130, 131 (Tex. Crim. App. 1972); *Wade v. State,* 814 S.W.2d 763, 765 (Tex. App.—Waco 1991, no pet.). The trial court may hold the litigant or attorney in contempt or use other remedies or sanctions. *Brazzell*, 481 S.W.2d at 131. Even if there has been a violation of the order on the motion in limine, it is incumbent that a party object to the admission or exclusion of evidence or other action in order to preserve error for appeal. *Id.*

In the instant case, appellant objected to a claimed violation of the order granting the motion in limine, not to the admission of evidence. On appeal, he continues to rely on his trial objection. No error was preserved.

Appellant, however, relies upon *Lucas v. State,* 378 S.W.2d 340 (Tex. Crim. App. 1964); *Tate v. State,* 762 S.W.2d 678 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) and *Govan v. State,* 671 S.W.2d 660 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd). The reliance is misplaced. None of these reversals rested upon preservation of error by a motion in limine. Despite the failure to preserve the error, appellant accepted the trial court's offer to instruct the jury to disregard the testimony. Normally, such an instruction cures any error or renders it

5

harmless. *Richards v. State,* 912 S.W.2d 374, 378 (Tex. App.—Houston [14th Dist.] 1998 pet. ref'd).[1] Appellant's complaint on appeal does not include the trial court's overruling of the motion for a mistrial.

In addition, the same or similar testimony as that here involved came into evidence without objection, rendering any error harmless.[2] *Anderson v. State,* 717 S.W.2d 622, 626-27 (Tex. Crim. App. 1986); *Couchman v. State,* 3 S.W.3d 155, 160-61 (Tex. App.—Fort Worth 1999, pet. ref'd); *Miranda v State,* 813 S.W.2d 724, 739 (Tex. App.—San Antonio 1991, pet. ref'd).

The first point of error is overruled.

### The Expert Witness

In his second point of error, appellant contends that the "trial court erred in allowing an untrained and noncertified social worker to testify to matters which are the subject of expertise required by a licensed professional counselor in violation of Rule 702 of the Rules of Evidence."

The witness in question was Kathy Moritz, a social worker, who counseled appellant and the complainant after their first separation in March 1998. One of the

---

[1] *See also Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Gardner v. State*, 730 S.W.2d 675, 695-97 (Tex. Crim. App. 1987).

[2] The complainant testified that after the assault in question one of appellant's sons observed her bruises and stated to appellant: "You hurt mama again." Kathy Moritz, a social worker to whom appellant and the complainant went for counseling after their March 1998 separation, testified without objection: "The separation was due to a physical violation altercation that occurred between them."

6

complainant's requirements for reconciliation after this separation was counseling. The counseling was conducted at the Seguin Family Institute beginning in April 1998, and covered a period of approximately two months before the parties changed their residence. Both appellant and the complainant made reference to the counseling in their trial testimony. Appellant related that: "It [counseling] was good and all. I found out some things about myself and it was good, but it . . . it wasn't working for us." Later, appellant testified: "I did find out that I was insecure but not in any kind of domineering or controlling manner." Appellant admitted that the counselor told him that he should not engage in controlling-type behavior, but he pointed out the counselor told the complainant the same thing. Appellant denied that he told the counselor he thought the complainant was not having sex with him as often as she should, or that he felt the complainant was treating him "badly" when she refused to have sex.

Moritz was called in rebuttal. Moritz stated that she graduated from Texas Lutheran College with a degree in social work in 1981; that she was employed for eight years as a child protective service worker, specializing in family and sexual assault violence; that for two years she worked at a rape crisis center providing counseling for sexual assault victims and in training and supervising sixty-five volunteers at the center; and that she had been employed for six years at the Seguin Family Institute as a therapist and assistant clinic director, which was her current employment. Moritz explained that in her current job she counseled family violence offenders, sex offenders, sexual assault survivors, and couples with relationship problems.

Moritz testified that beginning in April 1998 she provided counseling services to appellant and the complainant. There were eight sessions, some individually with appellant, before the couple terminated the counseling. Before the objection on which the complaint on

7

appeal is based, Moritz testified that based on her conversations and sessions with the couple and a discussion of their problems, she identified three issues. One was that appellant tried to exercise too much control over the complainant and her activities. The second issue was appellant's attitude that he was entitled to sex on demand. The third issue was appellant's "neediness"—"[h]is emotional need for someone close to be right there with him at all time [sic]."

After Moritz explained "neediness," appellant asked for the first time to take the witness on voir dire. *See* Tex. R. Evid. 705(b). Appellant established that Moritz had not done any post-graduate work in counseling and was not a licensed professional counselor. Moritz related, however, that she worked for a licensed professional counselor and that her license as a social worker allowed her to provide counseling services under the supervision of a licensed professional counselor. Moritz stated that any opinions given had been in response to questions asked and were based on her conversations with appellant.

At this point, the prosecutor interjected that he was not asking Moritz to give "a professional opinion as to a specific diagnosis," but was inquiring to establish that the witness had counseled the parties and had identified certain issues, "and more specifically, what did the defendant tell her that is contrary to what he told this jury."[3] Appellant then made his Rule 702 objection, claiming that the State had not laid the proper predicate and noting that Moritz was not a licensed professional counselor. The objection was overruled with the trial court finding that Moritz had "the requisite qualifications to testify as an expert as to the matters that she been

---

[3] *See* Tex. R. Evid. 607 (Who May Impeach).

8

asked about so far." The prosecutor was warned about venturing into areas of psychiatry and psychology.

On further direct examination, the prosecutor briefly revisited the three issues testified to by Moritz prior to the Rule 702 objection. When Moritz was asked if she was "confident" whether appellant had "come to terms" with the three issues, appellant's "calls for a professional opinion" objection was overruled. The question, however, was not answered. The prosecutor then elicited, without objection, that Moritz definitely did not feel that appellant had successfully adopted a more appropriate attitude about the three issues.

In order to preserve error on appeal, a party must make a timely specific objection. Tex. R. App. P. 33.1(a)(1)(A). Here, appellant failed to object to Moritz's testimony on the basis now urged on appeal until midway through the direct examination. Thus, Moritz's identification of the three issues and any opinion testimony was before the jury prior to the Rule 702 objection. No error for review was preserved. In fact, any error was waived. *Armstrong v. State,* 718 S.W.2d 686, 699 (Tex. Crim. App. 1985); *Jackson v. State,* 888 S.W.2d 912, 915 (Tex. App.—Houston [1st Dist.] 1994, no pet.). The bulk of Moritz's testimony following the Rule 702 objection was the same as that presented earlier. Generally, improper admission of evidence does not constitute reversible error if the same facts are proven by other properly admitted evidence. *Willis,* 785 S.W.2d at 383; *Couchman,* 3 S.W.3d at 160-61; *Miranda,* 813 S.W.2d at 739.

Moreover, the admissibility of evidence generally, and the qualifications of a witness to testify as an expert or as a lay witness, is within the discretion of the trial court. *See* Tex. R. Evid. 104(a); *Ventroy v. State,* 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1996, pet.

9

ref'd). A trial court's decision to permit a witness to testify as an expert or as lay witness (under Rule 701 of the Rules of Evidence) will not be disturbed on appeal absent a showing of an abuse of discretion. *Ventroy,* 917 S.W.2d at 422.

Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Tex. R. Evid. 701.

The rule's requirement that the opinion or inference of a lay witness be "rationally based on the perception of the witness" can be said to have two elements. *See* 2A Steven Goode, Olin Guy Wellborn, III & M. Michael Sharlot, *Courtroom Handbook on Texas Evidence*, ch. 5, art. VII, at 413 (Texas Practice 2000). The first element involves the personal knowledge of the witness as required by Rule 602. Tex. R. Evid. 602; *Bigby v. State,* 892 S.W.2d 864, 889 (Tex. Crim. App. 1994). The necessary personal knowledge may be gained by the perception of fact by the senses of the witness. *State v. Brainard*, 968 S.W.2d 403, 412 (Tex. App.—Amarillo 1998), *aff'd in part, rev'd in part on other grounds*, 12 S.W.3d 6 (Tex. 1999). Thus, the perception underlying a lay witness's testimony may be what was seen, heard, smelled, tasted, touched, or felt. *Id.* The second element mandates that the opinion must be one that a reasonable person could draw from the underlying facts. *Fairow v. State,* 943 S.W.2d 895, 900 (Tex. Crim. App. 1997). Under Rule 701, much must be left to the discretion of the trial court. *Austin v. State,* 794 S.W.2d 408, 410 (Tex. App.—Austin 1990, pet. ref'd).

Rule 702 (Testimony by Experts) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex. R. Evid. 702.

*See* 2A *Goode*, at 415. Rule 702 contains two initial hurdles that must be overcome before expert testimony will be admissible. *Roise v. State*, 7 S.W.3d 225, 234 (Tex. App.—Austin 1999). As the rule itself requires, the proponent of the testimony must establish (1) that the scientific technical, or other specialized knowledge will aid the trier of fact, and (2) that the expert is qualified to testify on the subject. *Id*. (citing *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995)).

Under the first prong, an expert's opinion should be based on a body of scientific, technical, or other specialized knowledge that is pertinent to the facts in issue, and sufficiently reliable for the expert's testimony to assist the trier of fact. *Roise* 7 S.W.3d at 234. As to the second prong, no rigid formula exists for determining whether a particular witness is qualified to testify as an expert. 2 Steven Goode, Olin Guy Wellborn, III, & M. Michael Sharlot, *Guide To The Texas Rules of Evidence: Civil and Criminal* § 702.3, at 54 (Texas Practice Supp. 2000). The expertise must be measured against the particular opinion the expert is offering. *Roise*, 7 S.W.3d at 234. While the proponent of the testimony has the burden of establishing the expert's qualifications, the trial court has the responsibility to ensure that "those who purport to the experts truly have expertise concerning the actual subject about which they are offering an

11

opinion." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996), and more recently, it has been made clear that a trial court's gate keeping obligation under Rule 702—to insure that the expert witness's testimony rests upon a reliable foundation and is relevant to the task at hand applies to all expert testimony not just scientific expert testimony. *Roise*, 7 S.W.3d at 235-36 (citing *Kumbo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999)); *see* also *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000).

Rule 702 itself provides that the requisite expertise may be acquired through knowledge, skill, experience, training, or education. "It is almost impossible to lay down any definite guidelines for determining knowledge, skill or experience required in a particular case or of a particular witness." *Rogers v. Gonzales,* 654 S.W.2d 509, 513 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.). "Special knowledge" may be acquired by virtue of the witness's experience. *Reece v. State*, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.). Moreover, contrary to appellant's trial objection, licensure, or certification in the particular discipline is not a *per se* requirement. *Southland Lloyd's Ins. Co. v. Tomberlain,* 919 S.W.2d 822, 827 (Tex. App.—Texarkana 1996, writ denied); *Guentzel v. Toyota Motor Corp.,* 768 S.W.2d 890, 897-99 (Tex. App.—San Antonio 1989, writ denied). Unlike the common-law requirement, a trial court under Rule 702 may admit an expert's testimony on a matter within most jurors' understanding if the testimony concerns some type of technical or specialized knowledge and would assist the jurors in their fact-finding function. *Glasscock v. Income Prop. Serv., Inc.,* 888 S.W.2d 176, 179-81 (Tex. App.—Houston [1st Dist.] 1994, writ dism'd).

As is evident from the record, Moritz's testimony was not of a scientific or technical nature but her opinions or inferences were based on impressions and conclusions

derived from perceptions of what she saw, heard, and observed during her eight sessions with appellant, and on her years of experience and training. *Ventroy,* 917 S.W.2d at 422; *Brainard*, 968 S.W.2d at 412. Further, based on Moritz's education, training and experience, the trial court found her to be an expert with specialized knowledge under Rule 702.

A witness may qualify to give testimony under both Rule 702 governing expert witnesses and Rule 701 permitting a lay or non-expert witness to offer opinions or inferences if the witness's testimony is based on first-hand knowledge. *Yohey v. State,* 801 S.W.2d 232, 243 (Tex. App.—San Antonio 1990, pet. ref'd); *Ventroy,* 917 S.W.2d at 422; *McCray v. State,* 873 S.W.2d 126, 128 (Tex. App.—Beaumont 1994, no pet.); *Austin,* 794 S.W.2d at 410. Given all the circumstances, we conclude that the trial court did not abuse its discretion in admitting Moritz's testimony over appellant's Rule 702 objection. The second point of error is overruled.

**First Jury Argument**

In his third point of error, appellant urges that the "trial court erred in overruling defense counsel's objection to improper jury argument which mischaracterized defense counsel's role in the trial."

Near the beginning of his opening jury argument at the guilt/innocence stage of the trial, the prosecutor stated:

> It seems to me the Defense would have you believe that the law that protects women against sexual assault shouldn't really apply to all the women all the time, but rather maybe the idea is that sexual assault should only protect some of the women some of the time.

13

Appellant's counsel objected on the ground that the argument was a "mischaracterization of the Defense role in the trial" and "he's striking at the Defendant over the shoulder of counsel." The court responded: "This is jury argument, ladies and gentlemen. I'm going to overrule the objection at this time. This is nothing more or less than jury argument at this time. Proceed, please." The prosecutor then continued to explain why the complainant was entitled to protection against sexual assault as any woman is, all without further objection.

Proper jury argument normally falls within one of four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to argument of opposing counsel; and (4) plea for law enforcement. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995); *Hathorn v. State,* 848 S.W.2d 101, 117 (Tex. Crim. App. 1992); *Borjan v. State,* 787 S.W.2d 53, 57-58 (Tex. Crim. App. 1990). Even when an argument exceeds the permissible bounds of these areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statue, or injects new facts harmful to the accused. *Todd v. State,* 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980). The remarks must have been a willful and calculated effort on the part of the State to deprive the accused of a fair and impartial trial. *Cantu v. State,* 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).

"It is improper for a prosecutor to imply in argument that the defense counsel is acting improperly in defending his client. . . . This type of argument is frequently called 'striking at the defendant over the shoulder of his attorney.'" 42 *Dix,* § 37.61, at 596-97; *see Boyde v. State,* 513 S.W.2d 588, 592 (Tex. Crim. App. 1974). This type of inflammatory argument may result in reversible error even if the trial court sustains the objection and instructs

14

the jury to disregard the argument. *See Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990); *Gomez v. State,* 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985).

The prosecutor's jury argument here was not in response to opposing counsel who had not argued, but it was the beginning of a proper plea for law enforcement which was eventually made without further objection. Moreover, the objected-to argument was based on reasonable deductions from the evidence. Appellant had elicited testimony that the thirty-four-year-old complainant had earlier joined the army reserves, received basic training, had served as a prison guard, had married an inmate, had entered into a boyfriend-girlfriend sexual relationship with appellant before the finality of his divorce, and had reentered the stormy relationship after a separation, counseling, and being fully aware of possible consequences.

Nevertheless, appellant still urges that the objected-to argument was an attack upon his defense counsel. He relies upon *Wilson v. State,* 938 S.W.2d 57 (Tex. Crim. App. 1996). We have examined *Wilson* and the cases cited therein and find the highly improper arguments in those cases factually distinguishable from the argument in the instant case. We conclude that the objected-to argument here was not an attack upon appellant over the shoulder of his counsel. Under any circumstances, the trial court did not err in overruling the objection. The third point of error is overruled.

**Second Jury Argument**

In his fourth point of error, appellant again complains of jury argument, this time at the punishment stage of the trial. He urges that the trial court erred in overruling his objection

to the prosecutor's jury argument "which mischaracterized the offense and the range of punishment in the case."

In his closing jury argument, the prosecutor addressed the proper range of punishment to be assessed. He argued against probation which had been urged by appellant's counsel in his jury argument. Turning to straight-time punishment, the prosecutor argued that the evidence suggested that this was not the least offensive "rape" that can occur. He asked the jury to look at the injuries inflicted. The prosecutor then stated: "I think they want to reward him because he didn't hurt her any worse than he did. I consider maybe give him a year for every abrasion, every - - -." The record then reflects:

> Mr. Scharmen: Objection, your Honor. That's an improper argument. He's on trial for one offense only, not for multiple offense's [sic].
>
> The Court: It is noted that he is charged with and has been convicted of rape and nothing else. The point is well taken. Proceed.
>
> Mr. Scharmen: I would ask the Court that since it sustained my objection, to instruct the jury to disregard the comment.
>
> The Court: The Court has not sustained your objection. The Court has added a supplemental instruction. Overruled.

The prosecutor then listed nineteen bruises found on the complainant and stated: "One year for every bruise, every - - -." Appellant's "same objection" was overruled.

It is difficult to match the complaint on appeal with the trial objection. Unless the complaint on appeal comports with the trial objection, nothing is preserved for review. *Turner v. State,* 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Skillern v. State,* 890 S.W.2d 849, 859 (Tex. App.—Austin 1994, pet. ref'd). An objection stating one legal basis may not be used

16

to support a different legal theory on appeal. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The jury charge correctly set forth the correct range of penalty applicable to the instant case. The prosecutor's argument was in accord. We do not view appellant's objection bearing on a mischaracterization of the range of punishment to have merit. Moreover, we fail to see how appellant's trial objections comport with the appellate complaint that the argument mischaracterized "the offense." Nothing is presented for review. It is true that both the prosecutor and the trial court referred to the offense as "rape," the former statutory name for the offense charged. We do not find that this, however, is the basis for appellant's complaint on appeal.

Appellant cites cases holding improper state argument asking the jury to assess punishment for independent, extraneous, or collateral offenses reflected by the record in addition to any punishment to be assessed for the offense alleged in the indictment. *Lomas v. State,* 707 S.W.2d 566, 569-70 (Tex. Crim. App. 1986); *Brown v. State,* 530 S.W.2d 118, 119 (Tex. Crim. App. 1975); *Klueppel v. State,* 505 S.W.2d 572, 574 (Tex. Crim. App. 1974). These cases are inapposite to the facts of the instant case. The prosecutor urged punishment only for the offense

charged based on injuries inflicted during the course of the one offense.[4] Point of error four is overruled.

The judgment is affirmed.


_____

John F. Onion, Jr., Justice

Before Justices Kidd, Yeakel, and Onion[*]

Affirmed

Filed:  November 16, 2000

Publish


_____

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).


_____

[4]   Further, *Lomas, Brown*, and *Klueppel* were all decided prior to the 1993 amendment to article 37.07, section 3(a).  *See* Tex. Code Crim. Proc. Ann. art. 37.07 & 3(a) (West Supp. 2000).  Under this statute, evidence deemed relevant to punishment by the trial court may be admitted at the penalty stage of the trial, including unadjudicated extraneous offenses or bad acts if it is shown that the defendant committed the same beyond a reasonable doubt.  If these requirement are met, the fact finder may use the evidence in assessing punishment.  *Fields v. State,* 1 S.W.3d 687, 688 (Tex. Crim. App. 1999).  Thus, a prosecutor may make reference to properly admitted evidence in his jury argument.  *Arthur v. State,* 11 S.W.3d 386, 393 (Tex. App.—Houston [14th Dist] 2000, pet. ref'd).