

## NUMBER 13-10-00266-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**FRANCIS FLOOD,** Appellant,

**v.**

**THE STATE OF TEXAS,** Appellee.

### On appeal from the 2nd 25th District Court of Gonzales County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

By three issues, appellant, Francis Flood, argues that the trial court erred when it allowed a witness to testify because: (1) the witness improperly provided expert testimony despite being called as a lay witness; (2) the State failed to give proper notice that this witness would testify as an expert; and (3) the State failed to lay the proper

predicate for the witness's testimony. We affirm.

## I. BACKGROUND

Flood was indicted on four counts each of aggravated sexual assault of a child and indecency with a child by contact. *See* TEX. PENAL CODE ANN. §§ 22.021, 21.11 (West Supp. 2010). During the jury trial on these offenses, the State called Tiffany Rankin, executive director and forensic interviewer for the Children's Advocacy Center in Gonzales, Texas to the stand. Rankin videotaped an interview with the alleged child victim in this case, C.K., after she made an outcry to her mother and her doctor.

During Rankin's direct examination, the prosecution asked her about her educational background. Flood's counsel, Noel H. Reese, objected and asked to approach the bench, where the following exchange occurred outside the presence of the jury:

REESE:    Your honor, before we get into her background and asking her to testify as an expert witness, we were not given notice on that. We were the ones that subpoenaed her for the sole purpose of proving up the video she took. So if he's going—

STATE:    I'm going to use her to prove up the video, your Honor. I'm not going to get into any area of expertise. I've told Defense Counsel I relied on their subpoena. They're the ones who subpoenaed her; I didn't.

JUDGE:    He—you can do it.

STATE:    But they've at least got the right to know who she is, she can explain herself in the capacity of her job. They have to have some background on of [sic] how she ended up in this position, and based on her training and experience, she can opine on observations.

REESE:    But according to the rules, you did not give us 20 days notice

that she was going to be testifying as an expert.

STATE: I'm not calling her as an expert, Judge.

REESE: If she's going to opine about stuff, she's being called as an expert.

STATE: We haven't gotten there yet, Judge.

COURT: When we get there, I'll decide; but you can do what you're—what he's talking about. I think he's right on the point.

STATE: Yeah, I agree.

COURT: Keep it clean.

STATE: I'm not going to do anything that's going to open the envelope.

COURT: Keep it clean.

The State proceeded to ask Rankin about her education background and work experience. Rankin went on to explain her responsibilities in her present position:

RANKIN: As a forensic interviewer that—when a child is brought to the advocacy Center through a referring agency, I talk to the child in—in a private setting, in a child[-]friendly setting, make them as comfortable as possible to tell what may or may not have happened to them.

STATE: Okay, and you say what may or may not have happened. Do children tell you stories or lack of stories?

REESE: Your honor, I'm going to object to this line of testimony. I don't think it's appropriate.

COURT: I'm going to allow it. Overruled.

3

STATE:     What's the purpose of the interview?

RANKIN:   The purpose of the interview is the child has been brought to the center . . . because there's believed to be some sort of abuse . . . by someone.

Rankin then proceeded to testify about the procedure that children follow when they arrive at the Children's Advocacy Center, the room in which the children are interviewed, the recording equipment used to videotape the interview, and the events leading up to C.K.'s interview. Through her testimony, the State laid the proper predicate to request the court to admit the video of C.K.'s interview into evidence. The video was admitted into evidence without objection.

The jury found Flood guilty on all eight indicted charges, and sentenced him to life in prison at the Texas Department of Criminal Justice—Institutional Division. *See* TEX. PENAL CODE ANN. § 12.32 (West Supp. 2010). This appeal followed.

## II. ANALYSIS

### A. Expert vs. Lay Witness Testimony

By his first issue, Flood contends that Rankin provided improper expert testimony. "The admissibility of evidence generally, and the qualifications of a witness to testify as an expert or as a lay witness, are within the discretion of the trial court." *Harnett v. State*, 38 S.W.3d 650, 657 (Tex. App.—Austin 2000, no pet.); *see* TEX. R. EVID. 104(a). The trial court's decision will not be overturned on appeal absent a showing that the court abused its discretion. *See Harnett*, 38 S.W.3d at 657; *Ventroy v. State,* 917 S.W.2d 419, 422 (Tex. App.—San Antonio 1996, pet. ref'd).

The Texas Court of Criminal Appeals dealt with a similar issue in *Osbourn v. State.* 92 S.W.3d 535 (Tex. Crim. App. 2002). In *Osbourn*, the court considered

4

whether a police officer had to be qualified as an expert before testifying how he recognized the smell of marihuana emanating from a vehicle. In analyzing the issue, the court stated the following:

> Both lay and expert witnesses can offer opinion testimony. Rule 701 covers the more traditional witness—one who "witnessed" or participated in the events about which he or she is testifying—while Rule 702 allows for a witness who was brought in as an expert to testify. . . . When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony.

*Id.* at 536. The court summarized that experts are not precluded from offering lay testimony regarding events which they have personally observed. *Id.*

Here, although Flood argues that Rankin was an expert, she did not offer an opinion about C.K.'s interview based on her expertise. Rankin simply testified about where she interviewed C.K., the recording process, and the steps leading up to C.K.'s videotaped interview. This testimony was based on the events she personally observed. *See* TEX. R. EVID. 701 (explaining that lay testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue."); *Osbourn*, 92 S.W.3d at 536. Rankin's testimony did not, as Flood contends, rely on her knowledge, skill, experience, training, or education as a forensic interviewer of child abuse victims. *See* TEX. R. EVID. 702. For example, Rankin did not opine about whether C.K. exhibited any physical or behavioral manifestations of a child abuse victim, or whether she believed C.K. was telling the truth about her sexual experiences with Flood. *See Yount v. State*, 872 S.W.2d 706, 708–10 (Tex. Crim. App. 1993). To the extent that Flood argues that Rankin improperly testified about "children's stories or lack of stories," the record clearly

5

shows that Rankin never answered that question. Instead, the State asked Rankin a different question before she responded.

In light of the foregoing, we hold that the trial court did not abuse its discretion when it found that Rankin testified as a lay witness. *See Harnett*, 38 S.W.3d at 657. We overrule Flood's first issue.

## B.     Failure to Provide Proper Notice

By his second issue, Flood argues that the State failed to provide proper notice that Rankin would testify as an expert. Texas Code of Criminal Procedure article 39.14(b) requires that experts be designated as follows:

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (West Supp. 2010). We previously concluded, however, that the trial court did not abuse its discretion when it admitted Rankin's testimony as lay witness testimony under Texas Rule of Evidence 701, as opposed to expert testimony under Rule 702. *See* TEX. R. EVID. 701, 702; *Harnett*, 38 S.W.3d at 657. Accordingly, the prosecution was not required to give Flood twenty days' notice of Rankin's testimony under article 39.14 given that Rankin was a lay witness and not an expert witness. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b). We overrule Flood's second issue.

## C.     Failure to Lay Proper Predicate

6

Flood's third issue argues that the State failed to lay the proper evidentiary predicate for Rankin to testify as an expert. *See* TEX. R. EVID. 702. Again, because we have concluded that the trial court did not abuse its discretion when it admitted Rankin's testimony as lay testimony, there was no need for the State to lay an expert predicate. *Id.* Accordingly, we overrule Flood's third issue.

### III. CONCLUSION

Having overruled all of Flood's issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of July, 2011.