COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 JOSE RAUL GUARDADO,
 
 
 §
 
 
  
 
 
 
 
  
 
 
  
 
 
 No. 08-11-00030-CR
 
 
 
 
 Appellant,
 
 
 §
 
 
  
 
 
 
 
  
 
 
  
 
 
 Appeal from the
 
 
 
 
 v. 
 
 
 §
 
 
  
 
 
 
 
  
 
 
  
 
 
 Criminal
 District Court Number One
 
 
 
 
  
 
 
 §
 
 
  
 
 
 
 
 THE STATE OF TEXAS,
 
 
  
 
 
 of Tarrant
 County, Texas
 
 
 
 
  
 
 
 §
 
 
  
 
 
 
 
 Appellee.
 
 
  
 
 
 (TC# 1183784D)
 
 
 
 
  
 
 
 §
 
 
  
 
 


 

 

O P I N I O N

Appellant Jose
Raul Guardado was indicted for the offense of aggravated sexual assault of a
child, and two counts of the offense of indecency with a child by touching.[1]
 Appellant entered a plea of not guilty
to the charged offenses and proceeded to a trial on the merits.  The jury found Appellant guilty of aggravated
sexual assault of a child and guilty of one count of indecency with a child by
touching.  At the conclusion of the
punishment phase of the trial, the jury recommended punishment of eighteen (18)
years confinement in the Institutional Division of the Texas Department of
Criminal Justice for the aggravated sexual assault of a child offense and five
(5) years confinement for the indecency with a child by touching offense.  The trial court imposed the sentence in
accordance with the jury’s recommendation and elected to run the sentences
concurrently.  Appellant raises three
issues in this Court.  First, that the
trial court erred by admitting evidence of extraneous conduct in violation of
the Texas Rules of Evidence. Second, that the trial court erred when it did not
give the jury a limiting instruction at the time the extraneous conduct
evidence was admitted, and third, that the trial court erred by permitting a
State’s witness to testify as an expert regarding children as victims of sexual
abuse.

Background

            During
the summer of 2009, OP, at the time a ten year-old girl, was residing with her
parents and three siblings.  Appellant is
OP’s uncle, and is married to Fabiana Guardado, OP’s aunt.  OP spent at least one night with Appellant and
Fabiana during that summer.  One morning,
she was watching television when Appellant sat down next to her on the couch.  OP testified that Appellant removed her pants
and panties and licked her “middle part” with his tongue.  OP stated that a girl uses her middle part to
urinate.  She also testified that
immediately after Appellant licked her, he touched her “boobs” underneath her
shirt and bra.

OP never saw
Appellant after this incident, although she and her family were with him on many
occasions prior to the incident.  OP told
the jury that prior to this incident, she recalled other times when Appellant
wrestled and tickled her and that these other instances occurred at Appellant’s
house, the pool, and the lake.  She
testified that on some of these occasions, Appellant touched her “boobs” and
that while she always wore a bra, Appellant touched her underneath her clothes.

            That
same summer, while spending the night with a friend named Samantha, OP
apparently told Samantha that OP’s grandfather had been sexually abusing
her.  The girls had recently watched a
television show dealing with the topic of sexual abuse.  However, on cross-examination, OP denied ever
telling anyone that her grandfather had touched her inappropriately, and denied
ever having watched a television show about sexual abuse, although she admitted
that she had told another friend, Yazmin, that she had seen such a television show
at Samantha’s house.  OP testified that
the police came to her house “not that long” after Appellant had touched her,
and that she told her mother what had happened after the police departed the
residence.

            Appellant
was also charged in a cause separate and apart from the instant cause, with two
counts of the offense of indecency with a child, SV, by touching.  Specifically, count one charged Appellant
with touching SV’s breast and count two charged him with touching SV’s
genitals.  The indictment further alleged
that SV was a child younger than 17 years and not Appellant’s spouse.  The State intended to proceed to trial on both
indictments, but following a ruling by the trial court only proceeded to trial
on OP’s case.

            Detective
Corinthia Campbell testified that she was a detective with the Arlington Police
Department and investigated OP’s complaint against Appellant.  Detective Campbell told the jury that the
initial report was that OP had been sexually assaulted by her grandfather, but
the investigation revealed that Appellant was actually the individual who had
committed the offense.

Extraneous Conduct Evidence

Detective Campbell
also testified that her investigation caused her to file a second case against
Appellant for sexually abusing SV.  When
the State informed the trial court that it intended to offer testimony of an
extraneous indecency offense committed by Appellant against SV, Appellant
objected arguing that he had not opened the door to such testimony.  The State offered other theories for the
admission of the extraneous conduct, specifically that Appellant had presented
a defense based on OP fabricating the allegations against him, and that the
conduct was “admissible to show a common scheme or plan being that the offenses
are almost identical as far as the defendant’s motive, intent, knowledge,
plan.”  The trial court held that the extraneous
conduct evidence was admissible pursuant to Texas Rule of Evidence 404(b).  Appellant requested that the trial court give
the jury a limiting instruction “at the time that the testimony is offered as
well as in the final charge,” and the trial court agreed to do so.

            SV
then testified that:  (1) she was
thirteen years old at the time of trial; (2) she went over to Appellant’s house
“a lot;” (3) while she was there, she played hide and seek with Appellant; and (4)
Appellant had touched her “boobs” under her shirt and bra.  SV did not recall when or how many times the
touching may have occurred but remembered that OP was with her when it happened.
 Despite the trial court’s agreement to
provide the jury with a limiting instruction regarding SV’s testimony at the
time of her testimony, no such instruction was given.[2]

            Another
witness, Cyntia Castillo informed the jury that she lived with Appellant and
Fabiana for a period of time, and that OP is her niece.  She testified that during the summer of 2009,
she slept in her nephew’s bed and that Appellant came into the room “every once
in a while.”  She stated that at some
point one night, “after having gone in and looking a number of times,”
Appellant “got close to the bed and laid down and lifted up the blanket” and
“moved” Ms. Castillo’s hair.  When Ms.
Castillo inquired as to what Appellant was doing, he responded “[w]ell, I
thought it was O[P].”

            Prior
to Ms. Castillo’s testimony, the State informed the trial court that it
intended to offer her testimony as “contextual” and “arising out of the same
transaction” as the indicted offenses.[3]
 Appellant argued that the notice was
late and constituted a surprise as well as being inadmissible evidence pursuant
to Texas Rule of Evidence 404(b) and Article 38.37 of the Texas Code of
Criminal Procedure. Appellant also argued that:  (1) Ms. Castillo’s testimony would be hearsay
under Texas Rule of Evidence 801; (2) the testimony was not relevant under
Texas Rule of Evidence 401; and (3) its probative value was substantially
outweighed by the danger of unfair prejudice under Texas Rule of Evidence
403.  The trial court overruled each of
Appellant’s objections and permitted Ms. Castillo to testify.

            Appellant argues that the trial court erred when it
admitted evidence outlined above of the two instances of extraneous conduct in
violation of the Texas Rules of Evidence.  Specifically, Appellant argues that the trial
court should not have permitted either SV or Cyntia Castillo to testify.

Standard
of Review

            When reviewing a trial court’s decision to admit
extraneous offense evidence under Rule 404(b), or over a Rule 403 objection, an
appellate court applies an abuse-of-discretion standard.  See De
La Paz v. State, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009).  A trial court abuses its discretion only when
its decision lies outside “the ‘zone of reasonable disagreement.’”  Id.
at 343-44.  The general rule is that the
defendant is to be tried only for the offense charged, not for any other crimes
or for being a criminal generally.  Segundo v. State, 270 S.W.3d 79, 87
(Tex.Crim.App. 2008); Crank v. State,
761 S.W.2d 328, 341 (Tex.Crim.App. 1988).  Evidence of extraneous acts of misconduct may
be admissible if:  (1) the uncharged act
is relevant to a material issue in the case, and (2) the probative value of
that evidence is not significantly outweighed by its prejudicial effect.  Segundo,
270 S.W.3d at 87.

Relevant evidence is any
evidence “having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable
than it would be without the evidence.”  Tex.R.Evid. 401; Rankin v. State, 974 S.W.2d 707, 709 (Tex.Crim.App. 1996).

“Evidence of other crimes,
wrongs or acts” may not be admitted during the guilt-innocence phase of trial “to
prove the character of a person in order to show action in conformity
therewith.”  Tex.R.Evid. 404(b); Marc
v. State, 166 S.W.3d 767, 775 (Tex.App.--Fort Worth 2005, pet. ref’d).  However, such evidence of extraneous offenses
may be admitted to prove motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. Tex.R.Evid. 404(b).  The Court of Criminal Appeals has explained, “‘Rule
404(b) is a rule of inclusion rather than exclusion.’  The rule excludes only that evidence that is
offered (or will be used) solely for the purpose of proving bad character and
hence conduct in conformity with that bad character.”  De La
Paz, 279 S.W.3d at 343 [Footnotes omitted].  The State, as the proponent of extraneous
offense evidence, bears the burden of showing admissibility.  Russell
v. State, 113 S.W.3d 530, 535 (Tex.App.--Fort Worth 2003, pet. ref’d); Rankin, 974 S.W.2d at 718 (op. on reh’g).

Application

In his first issue, Appellant
essentially contends that the admission of SV and Ms. Castillo’s testimony
failed to make a fact of consequence more or less probable relative to the
trial on the charged offenses, and that SV and Ms. Castillo’s testimony was so
substantially prejudicial that it outweighed any probative value the testimony
may have had.  We disagree.

As noted above, while evidence
of other crimes, wrongs, or acts may not be admitted during the guilt-innocence
phase of trial to prove the character of a person in order to show action in
conformity therewith,  such evidence of
extraneous offenses may be admitted to prove motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.  Tex.R.Evid.
404(b); Marc, 166 S.W.3d at 775.  Here, the extraneous evidence had a tendency
to make the existence of a fact of consequence more probable than it would have
been without the evidence, and was therefore relevant to prove motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.  See Tex.R.Evid. 401; Rankin, 974 S.W.2d at 709.

Next, although relevant,
evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of
cumulative evidence.  Tex.R.Evid. 403.

Once a Rule 403 objection is
made, the trial court must weigh the probative value of the evidence to
determine if it is substantially outweighed by its potential for unfair
prejudice. Santellan v. State, 939
S.W.2d 155, 169 (Tex.Crim.App. 1997).  A Rule
403 balancing test includes the following factors:  (1) the inherent probative force of the
proffered item of evidence along with, (2) the proponent’s need for that
evidence against (3) any tendency of the evidence to suggest decision on an
improper basis, (4) any tendency of the evidence to confuse or distract the
jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of
the evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco v. State, 210 S.W.3d 637, 641-42 & n.8
(Tex.Crim.App. 2006).

1.  Probative Value and Need

In this case, the trial court
could have concluded that the extraneous offense evidence was relevant,
probative, and necessary to rebut Appellant’s defensive theory that because OP
may have told another person that her grandfather was the perpetrator, she must
have fabricated her allegation against Appellant.  See
Ransom v. State, 920 S.W.2d 288, 301 (Tex.Crim.App. 1994); Bass v. State, 270 S.W.3d 557, 563
(Tex.Crim.App. 2008).[4]  In addition, the trial court could have
concluded, and in fact did conclude that the extraneous offense evidence was
relevant, probative and necessary to prove motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident.

2.  Unfair Prejudice

The trial court could have
reasonably determined that the extraneous offense evidence did not have a
tendency to suggest a decision on an improper basis and that the challenged
evidence tended to prove Appellant’s intent, knowledge, identity, or that his
actions were not the result of an accidental touching.  Although the extraneous evidence had the
potential to evoke an emotional response in the jury, it is clear from the
record that the State introduced the evidence to prove motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.  Additionally, in the trial
court’s charge to the jury, the trial court instructed the jury that it could
only consider the extraneous offense evidence in determining “intent,
knowledge, identity, or absence of mistake or accident, if any, in connection
with the crimes alleged in the indictment in this case, and for no other
purpose.”  Such a limiting instruction
certainly mitigated and/or eliminated the potential of improper consideration
of the extraneous evidence by the jury, if there was any.

3.  Confusion of the Issues

The trial in this cause lasted
approximately two days and encompasses some 300 plus pages of the record.  The State called eight witnesses and the
defense called one witness.

Both the direct and
cross-examinations of Cyntia Castillo and SV are concluded within 23 pages of
the record.  In other words, the State’s
presentation of the extraneous offense evidence consumed very little time in
comparison to the length of the State’s case-in-chief.

Additionally, the trial court
reasonably could have concluded that the extraneous offense evidence assisted
the jury in understanding Appellant’s motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake relative to his conduct in
connection with the crimes alleged in the indictment in this case.  Accordingly, the trial court could have reasonably
concluded that the extraneous offense evidence did not have a tendency to
confuse or distract the jury from the main issues in the case.

4.  Misleading the Jury

The State’s evidence
regarding the aggravated sexual assault and two counts of indecency with a
child was much more detailed than the extraneous offense evidence.  The main thrust of the State’s case was the
charged offenses.  Although the State
presented evidence of the extraneous offenses, it did not suggest that the
evidence could or should be used to convict Appellant for the offense against
SV or that Appellant had even committed an offense against Cyntia Castillo.[5]  The extraneous offense evidence was presented
in a fashion to prove Appellant’s intent or knowledge of the aggravated sexual
assault and indecency with a child offenses charged in the indictment.  The trial court could have reasonably
concluded that the extraneous offense evidence did not have a tendency to be
given undue weight by a jury that was not equipped to evaluate the probative
force of the evidence.

5.  Undue Delay and Needless Presentation of
Cumulative Evidence

As stated above, although the
trial of the cause lasted approximately two days, the time spent by the
prosecutor presenting the extraneous evidence, the trial court’s time
instructing the jury regarding the extraneous offenses, and the defense’s time
cross-examining the witnesses concerning the extraneous offenses was not
significant in comparison to the total length of the trial.  As such, the trial court could have reasonably
concluded that the presentation of the extraneous offense evidence would not
consume an inordinate amount of time, and indeed, it did not.  Additionally, the trial court could have
determined that the extraneous offense evidence was not cumulative of other
evidence presented at trial.

After balancing the Rule 403
factors, as the trial court clearly did, we conclude that the trial court could
have reasonably determined that the probative value of the extraneous offense
evidence was not substantially outweighed by the countervailing factors
specified in the rule.  See Tex.R.Evid.
403.  We cannot say that the trial court’s
ruling was outside the “zone of reasonable disagreement.”  De La
Paz, 279 S.W.3d at 343-44.  As a
result, we hold that the trial court did not abuse its discretion by admitting
the extraneous offense evidence.  See Tex.R.Evid.
403, 404.

Harm
Analysis

Had we concluded that the
trial court erred by admitting the evidence of extraneous conduct, we would then
be obligated to determine whether the error had “a substantial and injurious
effect or influence in determining the jury’s verdict.”  Whitaker
v. State, 286 S.W.3d 355, 363 (Tex.Crim.App. 2009), quoting King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997); see Tex.R.App.P.
44.2(b).  If the error had no influence
or only a slight influence on the verdict, it is harmless.  Whitaker,
286 S.W.3d at 362-63.  The error is
harmful when the reviewing court has “grave doubts” that the error did not
affect the outcome of the trial.  Williams v. State, 145 S.W.3d 737, 741
(Tex.App.--Fort Worth 2004, no pet.).  A
grave doubt is one in which “in the judge’s mind, the matter is so evenly
balanced that he . . . feels himself . . . in virtual equipoise as to the
harmlessness of the error.”  Williams, 145 S.W.3d at 741, quoting Russell v. State, 113 S.W.3d 530, 550
(Tex.App.--Fort Worth 2003, pet ref’d). 
This Court must calculate, to the extent possible, the probable impact
of the error on the jury in light of the existence of other evidence.  Wesbrook
v. State, 29 S.W.3d 103, 119 (Tex.Crim.App. 2000).  The presence of overwhelming evidence may be
a factor in the evaluation of harmless error.  Id.;
Motilla v. State, 78 S.W.3d 352, 357
(Tex.Crim.App. 2002)(“our conclusion . . . that overwhelming evidence of guilt
is a factor to be considered . . . applies to harm analysis conducted under the
current rules.”).

In reviewing the entirety of
this case, we find nothing in the record which suggests that the admission of
evidence of extraneous conduct had a substantial and injurious effect or
influence on the jury’s verdict.  We have
no grave doubts that the error, if any, affected the outcome of the trial.  The evidence presented against Appellant was
substantial, compelling, and indeed, overwhelming.  OP identified Appellant as the person who
sexually assaulted her.  Excluding the
evidence presented by SV and Cyntia Castillo, OP’s testimony was detailed and
unequivocal and supported by the State’s other witnesses.  In light of the foregoing, any error in the
admission of the evidence of extraneous conduct, and we have found none, was
harmless.

Appellant also contends that
the trial court erred when it permitted Cyntia Castillo to testify as to her
interaction with Appellant as outlined above, over his objection pursuant to
Article 38.37 of the Texas Code of Criminal Procedure.  The article provides, in relevant part, as
follows:

Notwithstanding Rules 404 and
405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts
committed by the defendant against the child who is the victim of the alleged
offense shall be admitted for its bearing on relevant matters, including:

 

(1) the state of mind of the
defendant and the child; and

 

(2) the previous and
subsequent relationship between the defendant and the child.

 

See Tex.Code Crim.Proc.Ann. art. 38.37, § 2 (West Supp. 2011).

 

In this case, the evidence
that Appellant repeatedly approached Cyntia Castillo as she laid in bed that
night, that he laid down on the bed next to her, lifted the blanket covering
her and moved her hair, all the while believing that Cyntia Castillo was OP,
who often slept in that bed when she spent the night at Appellant’s home, falls
within the type of evidence allowed under Article 38.37.  The record reflects that the extraneous acts
were admissible under Article 38.37 to show Appellant’s state of mind, as well
as the previous and subsequent relationship between Appellant and OP as well as
how Appellant approached his victims.  See Hinojosa v. State, 995 S.W.2d 955,
957-58 (Tex.App.--Houston [14th Dist.] 1999, no pet.).

Limiting
Instruction

Appellant also contends that
the trial court erred by not giving a limiting instruction to the jury at the
time the extraneous conduct evidence was admitted.

If extraneous acts are deemed
admissible by the trial court, “the jurors must be instructed about the limits
on their use of that extraneous act if the defendant so requests.”  Ex parte
Varelas, 45 S.W.3d 627, 631 (Tex.Crim.App. 2001)(en banc).  Furthermore, if a defendant requests a
limiting instruction to the admitted extraneous acts, he is entitled to one.  See id.
 A trial court errs when it fails to give
a requested limiting instruction in this situation.  See id.,
citing Abdnor v. State (Abdnor II), 808 S.W.2d 476, 478 (Tex.Crim.App.
1991).  Finally, when extraneous offenses
and acts are admitted for a limited purpose, a defendant is entitled, during
the guilt/innocence phase of the trial to request an instruction in the charge
that jurors are not to consider extraneous acts or offenses admitted for a
limited purpose unless they believe beyond a reasonable doubt that those
extraneous acts were committed by the defendant.  See
Varelas, 45 S.W.3d at 631-32, citing
George, 890 S.W.2d at 76.  Likewise, if a defendant’s counsel requests
an instruction for the jury that they “could not consider the extraneous act
evidence unless they believed beyond a reasonable doubt that the [defendant]
committed those acts, the requested charge should have been given.”  Varelas,
45 S.W.3d at 631.

When a trial court errs by
failing to give a contemporaneous limiting instruction, that error is
non-constitutional and is subject to a harmless error analysis pursuant to
Texas Rule of Appellate Procedure 44.2(b).  Jones v.
State, 944 S.W.2d 642, 653-54 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); Jones v. State, 119 S.W.3d 412, 423-24
(Tex.App.--Fort Worth 2003, no pet.).  A
non-constitutional error is harmless unless it affects a defendant’s
substantial rights.  Tex.R.App.P. 44.2(b); Jones, 119 S.W.3d at 424.  A substantial right is affected when the error
had a substantial and injurious effect or influence in determining the jury's
verdict.  King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253,
90 L.Ed. 1557 (1946).  Conversely, an
error does not affect a substantial right if we have a fair assurance that the
error did not influence the jury, or had but a slight effect.  Solomon
v. State, 49 S.W.3d 356, 365 (Tex.Crim.App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).  In making this determination, we review, among
other things, the record as a whole, including any testimony or physical
evidence admitted for the jury’s consideration, the nature of the evidence
supporting the verdict, and the character of the alleged error and how it might
be considered in connection with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002).

Here, as noted above,
Appellant requested that the trial court give the jury a limiting instruction
“at the time that the testimony is offered as well as in the final charge,” and,
although the trial court agreed to do so, no contemporaneous instruction was
given to the jury either prior or subsequent to the testimony of Cyntia Castillo
or SV.

The record reflects ample
evidence of Appellant’s guilt because OP’s testimony about Appellant’s actions
is sufficient to support the jury’s verdict as to each of the charged offenses.
Moreover, the extraneous evidence was not more heinous or inflammatory than the
evidence pertaining to the charged offenses, minimizing its prejudicial effect
even in the absence of a contemporaneous limiting instruction.  See,
e.g., Jones, 944 S.W.2d at 654; Jones,
119 S.W.3d at 425.  And the jury charge
contained a limiting instruction with regard to the extraneous conduct
committed by Appellant, which further reduced the risk that the jury might
misuse the evidence during their deliberations.[6]  See
Jones, 119 S.W.3d at 425.  For these
reasons, we conclude that any error by the trial court in failing to give the
jury a contemporaneous limiting instruction as to the extraneous offenses was
harmless.  See Tex.R.App.P.
44.2(b).

Appellant’s first and second issues
are overruled.

Expert Testimony

            In
his third issue, Appellant argues that the trial court erred by allowing
State’s witness, Lindsey Dula, a forensic interviewer of child victims of
sexual assault, to provide the jury with expert testimony regarding children as
victims of sexual abuse.[7]  The trial court ruled that Ms. Dula
would not be permitted to testify as an expert witness given that the State had
failed to disclose her as such.[8]
 However, the trial court allowed Ms.
Dula to testify in rebuttal of defensive theories raised that OP may have
talked with other individuals between the initial involvement of the
authorities and the time of the forensic interview and that OP may have watched
television shows where sexual abuse was suggested to her.

            We
review a trial court’s decision to admit or exclude testimony, including lay or
expert testimony, under an abuse of discretion standard.  Ellison
v. State, 201 S.W.3d 714, 723 (Tex.Crim.App. 2006); Osbourn v. State, 92 S.W.3d 531, 537 (Tex.Crim.App. 2002).

Opinion
testimony is not limited to experts.  Tex.R.Evid. 701; Osbourn, 92 S.W.3d at 535-36.  A lay witness may offer opinions or inferences
as long as they are:  (1) rationally
based on the perception of the witness; and (2) helpful to a clear
understanding of the witness’s testimony or the determination of a fact in
issue.  Id.  Further, witnesses who
possess training and experience are not precluded from offering lay testimony
regarding events they have personally observed.  Osbourn,
92 S.W.3d at 536.  Their observations, which
do not require significant expertise to interpret and are not based on
scientific theory, can be admitted as lay opinions.  Osbourn,
92 S.W.3d at 537.

However, not
all observations by witnesses with experience and training can be admitted as
lay opinion testimony.  See Osbourn, 92 S.W.3d at 537
(discussing Emerson v. State, 880
S.W.2d 759, 763 (Tex.Crim.App. 1994), which held that an officer’s opinion
based on observations while administering the horizontal gaze nystagmus (HGN)
test, a test based on a scientific theory, could only be admissible as expert
testimony under Rule 702).  Generally,
“observations which do not require significant expertise to interpret and which
are not based on a scientific theory can be admitted as lay opinions if the
requirements of Rule 701 are met.  This
is true even when the witness has experience and training.”  Osbourn,
92 S.W.3d at 537.  Moreover, a lay
witness with sufficient personal experience and knowledge may be qualified to
express an opinion on a matter outside the realm of common knowledge with
respect to events not normally encountered by most people in everyday life.  Id.  “It is only when the fact-finder may not fully
understand the evidence or be able to determine the fact in issue without the
assistance of someone with specialized knowledge that a witness must be
qualified as an expert.” Id.

In addition,
the requirement in Rule 701 that the opinion or inference of a lay witness be
“rationally based on the perception of the witness” has two elements.  Harnett
v. State, 38 S.W.3d 650, 657-58 (Tex.App.--Austin 2000, pet. ref’d), citing 2A Steven Goode, Olin Guy
Wellborn, III & M. Michael Sharlot, Courtroom
Handbook on Texas Evidence, ch. 5, art. VII, at 413 (Texas Practice
2000).  The first element is personal knowledge
gained by perception of fact by the senses of the witness, including what was
seen, heard, smelled, tasted, touched, or felt.  Id.
at 658, citing Bigby v. State, 892 S.W.2d 864, 889 (Tex.Crim.App. 1994).  The second element is the opinion must be one
that a reasonable person could draw from underlying facts.  Harnett,
38 S.W.3d at 658, citing Fairow v. State, 943 S.W.2d 895, 900
(Tex.Crim.App. 1997).

Appellant complains
that Ms. Dula testified as an expert witness when she testified, based on her training
and experience, that:  (1) a television
show on child abuse would not influence a child to make up instances of abuse;
and (2) one child’s outcry of child abuse would not influence another child to
make a false outcry of abuse.

We find Ms.
Dula’s testimony, under these circumstances, to be that of a lay witness
because it satisfies the requirements of Rule 701.  First, we disagree with Appellant’s assertion
and find that Ms. Dula’s opinion was rationally based on her perception of the
witness.  She testified she had
experience interviewing more than 5,000 children as a forensic interviewer, giving
her personal knowledge gained by her own observation and interaction with
children, and specifically her observation and interaction with this child.  Further, a reasonable person could have such
opinions by spending a significant amount of time around children.  Second, her opinion was not based on a
scientific theory.  Rather, it was
helpful to the jury and did not require significant expertise to interpret.  See
Osbourn, 92 S.W.3d at 537.  Therefore,
the trial court did not abuse its discretion by admitting Ms. Dula’s testimony
as lay testimony.  See Ellison, 201 S.W.3d at 723; Osbourn,
92 S.W.3d at 537.

Appellant’s
third issue is overruled.

Having overruled each of Appellant’s issues, the judgment of the trial
court is affirmed.

 

 

July 11, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)











[1]
This case was transferred from the Second Court of Appeals to this Court
pursuant to a docket equalization order entered by the Texas Supreme Court.  See
Tex.Gov’t Code Ann. § 73.001
(West 2005).  We have applied precedent
of the Fort Worth Court of Appeals.  See Tex.R.App.P.
41.3.





[2]
It must be noted that while Appellant made his request at an earlier point in
the trial, no such instruction was ever re-urged to the trial court either
immediately prior or subsequent to SV’s testimony.

 





[3]
The State provided Appellant written notice of its intent to offer evidence of
this bad act on November 5, 2010. 





[4]
Despite Appellant’s contention that the trial court did not permit the
testimony as a rebuttal to Appellant opening the door with a fabrication
defense, the trial court clearly stated that “the victim opened the door under
recent fabrication” (presumably as a result of OP’s cross-examination answers
related to whether she had ever told anyone that she had been abused by her
grandfather) but that the court was allowing the testimony pursuant to a common
scheme or design theory.





[5]
The evidence regarding Ms. Castillo was offered under a theory that it was
necessary to provide context and helped to establish Appellant’s common scheme
or plan in light of his belief that Ms. Castillo was in fact OP.





[6]
Specifically, the Court instructed the jury:

 

You are instructed
that if there is any testimony before you in this case regarding the
defendant’s having committed crimes, wrongs or acts other than the crimes
alleged in the indictment in this case, you cannot consider said testimony for
any purpose unless you find and believe beyond a reasonable doubt that the
defendant committed such other crimes, wrongs or acts, if any were committed,
and even then you may only consider those other crimes, wrongs or acts in
determining the proof of intent, knowledge, identity or absence of mistake or
accident, if any, in connection with the crimes alleged in the indictment in
this case, and for no other purpose.





[7]
The State argues that Appellant failed to preserve this issue for our review
because the trial court never ordered the State to disclose any expert
witnesses, and absent such an order, no claim is preserved.  See
Tex.Code Crim.Proc.Ann. art.
39.14(b)(West Supp. 2011); Tamez v. State,
205 S.W.3d 32, 39 (Tex.App.--Tyler 2006, no pet.).  The State further contends that Appellant’s
claims in this regard do not comport with his objections at trial.  See
Sterling v. State, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990).  After a careful review of the record, we
conclude that Appellant’s representation to the trial court that his motion for
disclosure of expert witnesses had previously been granted and which
representation was not challenged by the State was sufficient to preserve the
issue for our review. Additionally, in light of the lengthy discussion between Appellant’s
counsel, counsel for the State, and the trial court regarding Appellant’s
objections to Ms. Dula’s testimony as well as the trial court’s granting of
numerous objections by Appellant regarding information which could have been
considered expert testimony, we again conclude that the issue has been
sufficiently preserved for our review.

 





[8]
Although the State did include Ms. Dula on its witness list.